FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION          2006 OCT 11  A 10: 14

KEYSTONE PROPERTIES, LLC,

      Plaintiff,

v.

JACKSONVILLE PORT AUTHORITY,
TONY D. NELSON, RICARDO
MORALES, JR., WILLIAM C. MASON,
ED.D., MARILYN MCAFEE, JERRY W.
DAVIS, T. MARTIN FIORENTINO, JR.,
and THOMAS P. JONES, JR., in their
official capacities as Chairman and
Members of the Board of Directors of the
Jacksonville Port Authority,

      Defendants.

CIVIL ACTION FILE NO.:

3:06-cv-894-4-20TEM

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND INJUNCTIVE RELIEF

Plaintiff Keystone Properties, LLC, ("Keystone") hereby brings this Complaint against

Jacksonville Port Authority, Tony D. Nelson, Ricardo Morales, Jr., William C. Mason, Ed.D,

Marilyn McAfee, Jerry W. Davis, T. Martin Fiorentino, Jr., and Thomas P. Jones, Jr., in their

official capacities as Chairman and Members of the Board of Directors of the Jacksonville Port

Authority (collectively, "Jaxport") seeking injunctive relief and a declaratory judgment and

alleges as follows:

### PRELIMINARY ALLEGATIONS

1.

This is an action for declaratory judgment, pursuant to 28 U.S.C. § 2201, seeking to

declare that Section 726 (the "Bond Amendment") of the Transportation. Treasury. Housing and

Urban Development, the Judiciary, the District of Columbia, and Independent Agencies Appropriations Act of 2006 (the "Act") prohibits Jaxport from using any funds granted to it through this Act to support Jaxport's plans to use the power of eminent domain where the condemnation is not directed for a public use. Jaxport received money through the Act. Jaxport is in the process of taking Keystone's property through eminent domain in order to transfer the property to a private entity for primarily private gain.

2.

Keystone seeks injunctive relief pursuant to 42 U.S.C. § 1983 upon the grounds that Jaxport, under color of state law, deprived and continue to deprive Keystone of its rights secured by the Bond Amendment.

## PARTIES AND JURISDICTION

3.

Keystone is a limited liability corporation formed under the laws of the State of Florida with its principal place of business in Florida, located at 1375 Jackson Street, Suite 401, Fort Myers, Florida 33901.

4.

Jurisdiction of this Court is founded upon: (a) 28 U.S.C. § 1331 in that this is a civil action arising under the laws of the United States; and (b) 42 U.S.C. § 1983 in that Keystone's rights secured by federal law have been deprived by Jaxport's conduct under color of state and municipal law.

5.

Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b) because Jaxport resides in Jacksonville, Florida, and because a substantial part of the events giving rise to the

claim occurred in this judicial district.

6.

Defendant Jacksonville Port Authority is an independent government agency created by the Florida legislature and is a resident of the State of Florida within this judicial district. Jaxport may be served with process at its headquarters, located at 2831 Talleyrand Avenue, Jacksonville, Florida 32206, in accordance with F.S.A. § 48.111, by service upon Executive Director Rick Ferrin, and in his absence, upon Deputy Executive Director and Chief Financial Officer Ron Baker, and in his absence, upon any member of the Board named herein.

7.

Defendants Tony D. Nelson, Ricardo Morales, Jr., William C. Mason, Ed.D., Marilyn McAfee, Jerry W. Davis, T. Martin Fiorentino, Jr., and Thomas P. Jones, Jr. are members of the Jaxport Board of Directors, and all reside in the State of Florida, and are therefore subject to the venue and jurisdiction of this Court. They may be served with process at the following addresses:

Tony D. Nelson
2831 Talleyrand Avenue
Jacksonville, Florida 32206

Ricardo Morales, Jr.
2831 Talleyrand Avenue
Jacksonville, Florida 32206

William C. Mason, Ed.D
2831 Talleyrand Avenue
Jacksonville, Florida 32206

Marilyn McAfee
2831 Talleyrand Avenue
Jacksonville, Florida 32206

3

Jerry W. Davis
2831 Talleyrand Avenue
Jacksonville, Florida 32206

T. Martin Fiorentino, Jr.
2831 Talleyrand Avenue
Jacksonville, Florida 32206

Thomas P. Jones, Jr.
2831 Talleyrand Avenue
Jacksonville, Florida 32206

8.

The Board members, in their official capacity, are charged with supervising and overseeing the operations and mission of Jaxport.

9.

The acts and proceedings complained of occurred in the State of Florida and in this judicial district.

## FACTUAL BACKGROUND

10.

In November, 2005, the United States Congress appropriated funds for fiscal year 2006 to several federal departments, including the Department of Housing and Urban Development ("HUD") and the Department of Transportation ("DOT").

11.

The Bond Amendment was added to the Act to address the Supreme Court's holding in Kelo v. City of New London, 545 U.S. 469, 125 S.Ct. 2655 (2005). The Bond Amendment provides that:

> No funds in this Act may be used to support any Federal, State, or local projects that seek to use the power of eminent domain, unless eminent domain is employed only for a public use: Provided, That

4

> for purposes of this section, public use shall not be construed to include economic development that primarily benefits private entities: . . . .

Transportation, Treasury, Housing and Urban Development, the Judiciary, the District of Columbia, and Independent Agencies Appropriations Act of 2006, Pub. L. No. 109-115, 119 Stat. 2396.

12.

In fiscal year 2006, Jaxport received funds from HUD and DOT.

13.

After accepting the federal monies, Jaxport added the funds to its capital budget for fiscal year 2006.

14.

The HUD and DOT funds provided Jaxport with additional capital for fiscal year 2006 to augment the operating revenues derived from Jaxport's commercial projects and grants from the State of Florida.   Therefore, the federal funds enable Jaxport to operate its facilities, purchase property and finance eminent domain actions.

15.

Upon information and belief, all capital funds were commingled in Jaxport's accounts, such that the specific use of the federal funds cannot be identified.

16.

Upon information and belief, Jaxport has not attempted to track how it spends its federal funds, and has refused to identify the sources of capital allocated to compensate Keystone for the taking of its property.

17.

Throughout fiscal year 2006, Jaxport actively pursued opportunities to purchase land along the St. John's River in the vicinity of the current Jaxport properties.

18.

While pursuing land acquisition as a public entity, Jaxport also worked with private enterprise partners who were also interested in developing properties along the St. John's River.

19.

In recent years, Jaxport and Norfolk Southern Corporation ("Norfolk Southern") have forged an informal partnership to seek potential tenants for the commercial properties Jaxport intended to acquire. The dominant purpose of the partnership is to increase Norfolk Southern's railroad business by expanding the market for cargo transit from ports along the St. John's River.

20.

Keystone owns approximately 65 acres of waterfront property along the St. John's River in Jacksonville (the "Property"). Keystone is developing the Property by building a large-scale coal and bulk cargo terminal with rail and marine access.

21.

Jaxport passed a resolution and filed a petition to condemn the Property and adjacent tract, Parcel B, (together referred to as the "Jefferson-Smurfit Property") (the "Condemnation"). The Condemnation is currently pending in the Circuit Court of Duval County, Florida, Case No.: 2005-CA-007802, Division: CV-G. The resolution and the petition for the Condemnation state that the purpose for the taking is economic development.

22.

Although Jaxport has not yet acquired title to the Jefferson-Smurfit Property, Jaxport has received and spent federal funds appropriated by the Act to support the Condemnation.

23.

Jaxport is not taking the Property for a public port or a valid public use.  Rather, Jaxport has agreed to lease the condemned property to Drummond Coal Company ("Drummond"), one of Keystone's competitors, for the development of a coal terminal.

24.

Drummond stands to make hundreds of millions of dollars in profits from using the Property in substantially the same way Keystone will use the Property.

25.

Drummond has also agreed to use Norfolk Southern as the primary rail carrier to transport the imported coal to Drummond's customers throughout Florida and the Southeast, thereby greatly expanding Norfolk Southern's rail system.  As a result, Norfolk also expects to make hundreds of millions of dollars from the project.

26.

Neither Drummond nor Norfolk Southern would have these opportunities were it not for Jaxport's use and abuse of its eminent domain power to take the Property.

27.

Therefore, the underlying "economic development" purpose of Jaxport's eminent domain project is to develop private coal and rail facilities that are not intended for public use and that will exclusively benefit the private participants in the project.  Jaxport's stated mission is not to operate public facilities for the citizens of Jacksonville, but rather to be an "economic engine."

28.

Jaxport concedes that development of a coal terminal on the Property will have limited, if any short term public economic benefit.  Jaxport can point to no analysis or study that shows its abuse of the eminent domain power for the purposed purpose of economic development would constitute a public use under the Bond Amendment.

### COUNT I
### DECLARATORY JUDGMENT THAT
### JAXPORT VIOLATED BOND AMENDMENT

29.

Keystone realleges and incorporates by reference, as though fully set forth, paragraphs 1 through 28 of this Complaint.

30.

An actual controversy exists within the meaning of 28 U.S.C. § 2201 regarding the authority of Jaxport to use its fiscal year 2006 funds to support the proposed condemnation of the Property.

31.

A declaratory judgment is proper in that it will clarify the legal uncertainty of whether Jaxport may use its funds to support the Condemnation.  Until that time, Keystone's property rights are completely uncertain.  Keystone has and continues to invest hundreds of thousands of dollars into developing the Property for a bulk cargo terminal.  A clarification of Jaxport's ability to take the Property is imperative at this time.

32.

The Bond Amendment unambiguously prohibits the use of funds appropriated by the Act for Federal, State or local projects that use the power of eminent domain for purposes other than

public use.  The Bond Amendment specifically excludes from the definition of public use any economic development projects that primarily benefit private entities.

33.

The Act unambiguously conditions receipt of funds from federal agencies on the recipients' consent to comply with the restrictions of the Bond Amendment and other conditions contained in the Act.

34.

Jaxport accepted federal funds from HUD and DOT in fiscal year 2006.  Accordingly, Jaxport agreed not to use those funds to support eminent domain projects with purposes other than public use.

35.

There will be no public use for the Property once it is condemned.

36.

Jaxport claims that the Property is necessary for economic development, however, the benefits to the participating private entities dwarf the meager public benefit that might inure to the City of Jacksonville.

37.

Jaxport has spent federal funds appropriated by the Act in a way that supports the taking of the Property, and intends to continue spending federal funds in spite of the prohibition in the Bond Amendment.

38.

Jaxport's conduct in this regard directly violates the prohibitions of the Bond Amendment.

39.

Without resolution by this Court and determination of the scope and meaning of the Bond Amendment, Jaxport will continue to benefit from federal funds on its way to taking the Property.   Should Keystone proceed in defense of the Condemnation without a judicial declaration of the Bond Amendment's impact on Jaxport's spending, Keystone's interests will be at enormous risk.

40.

By reason of the foregoing, Keystone is entitled to a judgment declaring that:

(a) Jaxport's Condemnation violates the public use doctrine of the Bond Amendment and must be abandoned;

(b) Jaxport may not use any resources from HUD or DOT received in fiscal year 2006 to support the Condemnation; and

(c) Jaxport may not use any funds to support the Condemnation because money is fungible.

## COUNT II
## VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983

41.

Keystone realleges and incorporates by reference, as though fully set forth, paragraphs 1 through 28 of this Complaint.

42.

By authorizing and prosecuting the Condemnation, the Port Authority and the Board deprived Keystone of the rights created and secured by the Bond Amendment.

43.

Congress intended to create an implied right of action in the Act to enforce the Bond Amendment.

44.

Keystone is within the class of persons upon which Congress intended to confer a right under the Bond Amendment.

45.

The Port Authority and the Board have, under the color of state law, subjected Keystone to the deprivation of its rights and privileges secured by the Bond Amendment entitling Keystone to relief.

**A.    Under the Color of State Law**

46.

The Port Authority and the Board act under the color of state law.

47.

Title 22, Section 315.03 of the Florida Statutes grants Jaxport the authority to acquire land using the power of eminent domain.

48.

Therefore, the Jaxport acted under color of Florida law when it passed the resolution authorizing the Condemnation.

49.

Jaxport acted under color of Florida law when it filed the Condemnation petition to take the Property and continue to act under color of Florida law by prosecuting the Condemnation.

**B.**     **Keystone's Rights Under the Bond Amendment**

50.

The Act creates the right of property owners like Keystone to be free from agencies like Jaxport using federal money to take private property for uses other than those that are public.

51.

The Act also creates a right in private property owners to be free from eminent domain actions funded by federal money that primarily benefit private entities.

**C.**     **The Port Authority and the Board Violated the Bond Amendment**

52.

Jaxport filed and is prosecuting the Condemnation to take the Property.

53.

Jaxport has contracted to lease the Property to a private entity for the development of a private coal terminal.

54.

The Drummond coal terminal will generate tremendous private benefit for Drummond, Norfolk Southern and other private participants without serving a public use.

55.

In its effort to condemn the Property, Jaxport has spent funds from its operating accounts.

56.

Jaxport has spent its federal funds on other projects that would ordinarily be paid for by operating revenues or State grants.

57.

Because it accepted funds from HUD and DOT in fiscal year 2006, Jaxport was bound by the restrictions of the Bond Amendment. Because the stated purpose for taking the Property is not a public use, Jaxport has violated Keystone's rights secured by federal law.

### D.    Keystone is Entitled to Immediate Injunctive Relief

58.

Keystone is entitled to injunctive relief under 42 U.S.C. § 1983 against Jaxport for the violations of Keystone's statutory rights. Specifically, Keystone is entitled to an injunction, enjoining Jaxport's ability to spend federal funds or other funds displaced by federal monies to support the taking of the Property for purposes other than public use.

59.

If Jaxport's actions are allowed to stand and continue, there is a high likelihood of substantial and immediate irreparable injury to Keystone.

60.

Furthermore, the injury to Keystone is imminent and will be direct, not conjectural or hypothetical. The taking will deprive Keystone of an invaluable piece of private property and the opportunity to use that property for commercial development.

61.

Keystone has no adequate remedy at law.

62.

The facts and applicable law show a substantial likelihood that Keystone will prevail on the merits herein.

13

63.

The threatened harm to Keystone, should Jaxport be allowed to continue to violate the Bond Amendment, outweighs any damage a proposed injunction may cause Jaxport.

64.

The proposed injunction is not adverse to public interest.

65.

For the foregoing reasons, Keystone is entitled to a preliminary and permanent injunction prohibiting Jaxport from using any funds to support the Condemnation to acquire the Property.

**WHEREFORE,** Keystone prays:

1. That each of the defendants be required to appear as provided by law to answer the allegations of this Complaint;

2. That this Court declare the Bond Amendment applies to Jaxport, and accordingly declare:

    a. that Jaxport is using federal funds to support the use of eminent domain for other than a public use;

    b. that Jaxport's plan to take the Property through eminent domain and develop a private coal terminal will primarily benefit private interests and violate the Bond Amendment;

    c. that Jaxport may not use any funds to take the Property through eminent domain.

3. That this Court enter a preliminary injunction stopping Jaxport from spending any funds that might directly or indirectly support acquisition or development of the Jefferson-Smurfit Property;

4. That this Court permanently enjoin Jaxport from pursuing the acquisition—by eminent domain or development—of the Jefferson-Smurfit Property;

14

5. That Keystone be awarded attorneys' fees and costs as provided by 42 U.S.C. § 1988; and

6. That Keystone have such other and further relief as the Court may deem just and proper.

This ___ day of October, 2006.

_Ryan T. Pumpian_

Ryan T. Pumpian
Florida Bar No. 156220
POWELL GOLDSTEIN LLP
Fourteenth Floor
One Atlantic Center
1201 W. Peachtree Street, NW
Atlanta, Georgia 30309
Telephone: (404) 572-6600
Facsimile:  (404) 672-6999


Of Counsel:
Simon H. Bloom
Georgia Bar No.: 064298
Stephanie E. Dyer
Georgia Bar No.: 253075

POWELL GOLDSTEIN LLP
Fourteenth Floor
One Atlantic Center
1201 W. Peachtree Street, NW
Atlanta, Georgia 30309
Telephone: (404) 572-6600
Facsimile:  (404) 672-6999


Attorneys for Plaintiff Keystone Properties, LLC

::ODMA\PCDOCS\ATL\1082271\1

15